**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| RICHARD WALTON, | Civil No. 08-0068-WQH (LSP) |
| Petitioner, | |
| vs. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| DERRAL G. ADAMS, Warden, | |
| Respondent. | |

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Richard Walton ("Walton"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus in the Eastern District of California (Fresno Division) on January 2, 2008 [doc. no. 1]. On November 25, 2008, the Petition was reassigned to visiting District Judge M. James Lorenz for all further proceedings [doc. no. 16] and, on December 30, 2008, it was again reassigned to visiting District Judge William Q. Hayes [doc. no. 18].

Walton is serving a prison sentence of 38 years to life after pleading guilty to gang-related first degree murder with use of a firearm and attempted murder. (Pet. at 1.)[1] In his Petition, brought pursuant to 28 U.S.C. § 2254, Walton does not challenge the legality of his conviction or

---

[1] The Court refers to the court-assigned page numbers printed at the top of the Petition's pages, *e.g.,* "Page 1 of 60."

sentence, but instead alleges that he was denied due process in conjunction with a prison disciplinary hearing. (Pet. at 9-17.) Walton contends that his due process rights were violated when: (1) he was found guilty of possessing an inmate-manufactured weapon based on no evidence, (2) he was denied the right to call witnesses and present documents at the disciplinary hearing, (3) he was wrongly denied a Staff Assistant to prepare for the prison disciplinary hearing, and (4) he was not interviewed as part of the second level inmate appeals process. (*Id.*.)

On August 6, 2006, the California Department of Corrections ("CDC") delivered to Walton a copy of a Rules Violation Report ("RVR"), pertaining to a July 31, 2006 incident in which Walton was charged with possession of an inmate-manufactured weapon. (*See* Pet. at 30.) On August 30, 2006, Walton participated in a disciplinary hearing on the charge alleged in the RVR. (*Id*. at 30-31.) The Senior Hearing Officer, Correctional Lieutenant C.L. Cannedy ("SHO"), found Walton guilty of the charge and assessed a 360-day forfeiture of behavioral ("good time") credits and ten (10) days loss of yard privileges. Additionally, Walton was referred to the Institutional Classification Committee for "[Segregated Housing Unit] Term Assessment." (Pet. at 31, 36.)

On July 16, 2007, Walton filed a petition for writ of habeas corpus in the state superior court challenging the administrative decision. (Resp't Answer to Petition for Writ of Habeas Corpus [doc. no. 13] ("Answer"), Ex. 1.) The superior court denied the petition on September 4, 2007 in a reasoned order. (*Id*.) Walton then filed a habeas petition in the appellate court, which was denied on October 11, 2007 without comment or citation to authority. (Answer, Ex. 2.) Thereafter, Walton filed a habeas petition in the California Supreme Court, presenting the same claims raised in his petition to the appellate court, which the supreme court denied on November 28, 2007 without comment or citation to authority. ( Answer, Ex. 3.)

Walton filed the Petition in this case on January 2, 2008 [doc. no. 1]. After the reassignments referenced above, Respondent filed an Answer, Memorandum of Points and Authorities, and accompanying Exhibits in support of the Answer on May 7, 2008 [doc. no.13]. Walton filed no Traverse. The Court has now considered the Petition, Answer, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **DENIES** the Petition.

## II. THE DISCIPLINARY PROCEEDINGS AGAINST WALTON

On July 31, 2006, while Walton was housed at California Sate Prison Sacramento, Correctional Lieutenant J. Flint completed a Crime/Incident Report containing the following information:

> [¶] On Monday, July 31, 2006, at approximately 1900 hours, Officer K. Kong was conducting lock down cell searches in C Facility Five Block. Officer Kong was searching in cell FC 5-229, jointly occupied by inmates WALTON (P-29579, FC 5-229U) and RITH (T-59425, FC 5-229-L). Officer Kong discovered while searching the pipe chase of FC 5-229, an inmate-manufactured weapon wrapped in cellophane underneath the sink area.
>
> [¶] The weapon was made from flat metal stock. The weapon measured approximately five and one half inches in length, one sixteenth of an inch in thickness, with a handle about 3 and one half inches long, wrapped with green masking tape. The blade was approximately two inches in length and sharpened to a point.
>
> [¶] Officer Kong took one photograph of the weapon and processed it into Evidence Locker #C-3.
>
> [¶] WALTON and RITH was subsequently remanded to Administrative Segregation.
>
> [¶] There were no alarms sounded, no use[] of force, and no injuries to staff or inmates as a result of this incident. All appropriate personnel were notified. This matter will be referred to the Sacramento County District Attorney's Office for possible felony prosecution. Both inmates are not participants in the [Mental Health Services Delivery System] program.

(Pet. at 39.) An RVR was issued, containing the same information. (*See* Pet. at 30-31.)[2]

On August 6, 2006, Walton requested assignment of an Investigative Employee. (Pet. at 33.) On that same date, Walton waived assignment of a Staff Assistant. (*Id.*.) On August 12, 2006, Correctional Officer ("CO") J. McAnelly was assigned as the Investigative Employee for Walton's disciplinary hearing. (*Id.*) CO McAnelly informed Walton that his duties were "as a fact finder for the Senior Hearing Officer." (*Id.*) CO McAnelly informed Walton that he would interview all requested witnesses, and he explained to Walton that questions which were irrelevant to the investigation, redundant, or solicited personal opinion would not be asked by him. (*Id.*) CO McAnelly reported that "Inmate WALTON stated that he had no objection to my serving in this

---

[2] It is unclear from the record before the Court whether Walton was prosecuted by the Sacramento County District Attorney's Office.

capacity." (*Id.*)

CO McAnelly made the following additional findings as part of his investigation:

[¶] DEFENDANT'S STATEMENT: Inmate WALTON (P-29579) stated that the weapon was not his or his cellmate RITH (T-59425). He believes the cell was not searched prior to them moving in. WALTON stated, "I would also like to see an Exhibit B [record of cell search] from before we moved in this cell. I would like to know what measures were needed to retrieve the item from the chase or under the sink. I repeat, this was not our weapon, we program [sic]. Question if you would search under the sink prior to placing inmates in the cell? I would like to ask the Officers that searched the cell prior to us moving in if they search[ed] under the sink."

[¶] REPORTING EMPLOYEE'S STATEMENT: Correctional Officer K. Kong stated he was looking in the chase and saw a piece of plastic and later found it to be a weapon. Officer Kong states he easily removed the weapon from inside the cell with a piece of metal from a clip board. He states he could not see the weapon from inside the cell. He knows the inmates moved into the cell on December 10, 2005, during Second Watch, and the cell was searched." Officer K. Kong was asked the following questions provided by Inmate WALTON and gave the listed responses:

Q1: "Was there a cell search prior to them moving in and if so, can they have a copy of the [record of the cell search]?
A1: (unknown)
Q2: "How was the weapon retrieved? Would they need tools to remove the weapon?"
A2: "No."
Q3: "How did Officer Kong locate the weapon? How did he get it out?
A3: "I saw it from inside the cell and retrieved it from the plumbing chase."
Q4: "Would you normally look under the sink on a search prior to inmates moving in?"
A4: "I would not."

[¶] INTERVIEW OF INMATE WITNESS: Inmate RITH (T-59425) states, "I also was charged with this bogus charge. I don't think the cell was searched, if so, not well enough to find this weapon. I would like to see [a record of the cell search] and know what it took to retrieve this weapon. And also, what tools were needed to do so, we do not have any tools."

[¶] [Investigative Employee] STATEMENT: Inmate WALTON (P-29579) states the weapon was not his or his cellmate [sic] and they had no knowledge that the weapon was there and does not believe he could get to it. Inmate RITH states the same.

[¶] After talking with Officer K. Kong, I found out both inmates moved in that cell December 10, 2005. I was unable to find [a record of the cell search]. Officer Kong states Second Watch Officers did search the cell prior. He was not sure if they looked in the plumbing chase on a regular search. He stated he does not look in the chase. Officer Kong stated he saw the weapon from the chase and <u>could</u> retrieve it very easily from inside the cell with a piece of metal from a clip board.

[¶] Inmate WALTON requested a witness Inmate RITH. They both stated the weapon was not theirs and they had no prior knowledge of the weapon being placed there. Inmate WALTON submitted four questions for the Reporting Employee

4

Officer K. Kong. Inmate WALTON did not request for the [Investigative Employee] to interview any other witnesses, staff or inmate.

(Pet. at 33-34.)

On August 30, 2006, the SHO conducted a hearing on the RVR. (*See, generally,* Pet. at 30-31.) Walton was present at the hearing, and he acknowledged receipt of all reports used in evidence more than 24 hours prior to the hearing. (*Id*. at 30.) Walton stated that his health was good and that he was ready to proceed with the hearing. (*Id*.) "A Staff Assistant was waived by inmate WALTON prior to and during the hearing. An Investigative Employee was required due to AD-Seg housing and Correctional Officer J. McAnelly was assigned on 8-12-06." (*Id*.)

At the time of the hearing, Walton pled "not guilty" and stated, "I didn't know it was there. Look where it was at. They found it from the pipe chase, you couldn't see it from the cell." (Pet. at 30.) The RVR states:

> [¶] Inmate Walton requested inmate RITH (T-59425) as a witness at the hearing. The SHO did not grant inmate RITH. WALTON expects inmate RITH (T-59425) to state that the weapon is not theirs and that the cell was not searched prior to their moving into the cell. This information is contained within the body of the Investigative Employee's Report. Therefore, the SHO determined that inmate RITH would provide no new pertinent information to the hearing.

(Pet. at 31.)

Walton was found guilty of possession of an inmate-manufactured weapon based on the following evidence: (1) The RVR by CO Kong stating that he found the inmate-manufactured weapon in Walton's cell, (2) Walton's statement that he and his cellmate had been in the cell since November 2005[3], (3) the information contained in the I.E. Report (Serious Rules Violation Report) by CO McAnelly (set out above), (4) the photographic evidence, viewed by Walton, and (5) the fact that the entire institution was searched in December 2005 including the housing unit cells and the pipe chases. (Pet. at 31.) The SHO advised Walton of his right to appeal the findings of the hearing and the methods by which to do so. (*Id*.) The SHO assessed 360 days forfeiture of behavioral ("good time") credits and ten (10) days loss of yard privileges. (*Id*.)

### III. DISCUSSION

---

[3]Walton's statement that he and Rith had occupied the cell since November contradicted CO Kong's statement that the cellmate had moved in on December 10, 2005. (*See* Pet. at 31, 34.)

## A. Scope of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> [¶] The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (West 2008) (emphasis added). As amended, 28 U.S.C. § 2254(d) reads:

> [¶] (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
> [¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West 2008) (emphasis added).

"[The Antiterrorism and Effective Death Penalty Act ("AEDPA")] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F. 3d 998, 1001 (9th Cir. 2007), quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). To obtain federal habeas relief, Walton must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003). The "objectively unreasonable" standard is not met by a showing of error or of an incorrect application (as opposed to an objectively unreasonable application) of the governing federal law. *Andrade,* 538 U.S. at 75; *Woodford,* 537 U.S. at 25; *Bell v. Cone*, 535 U.S. 685, 694, 699 (2002) (stating "it is

not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied [the Supreme Court precedent] incorrectly"). As the U.S. Supreme Court explained, this standard is different from the "clear error" standard in that "[t]he gloss of clear error fails to give proper deference to state court by conflating error (even clear error) without unreasonableness." *Andrade,* 538 U.S. at 75.

Where there is no reasoned decision from the state's highest court, this Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). A state court need not cite U.S. Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [U.S. Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

**B.   Analysis**

Walton claims he was denied due process of law when: (1) no evidence supported the guilty finding, (2) he was denied the right to present witnesses and documentary evidence at his disciplinary hearing, (3) prison officials failed to appoint a Staff Assistant to help Walton prepare for the disciplinary hearing, and (4) prison officials failed to interview him in conjunction with his second level institutional appeal. (*See* Pet. at 7-20.) The California Supreme Court, as well as the appellate court, denied his habeas petitions without furnishing a basis for its reasoning. (Answer, Exs. 2 & 3.) Accordingly, this Court "looks through" to the reasoning provided by the Sacramento County Superior Court in denying Walton's habeas petition filed there. *Ylst v. Nunnemaker*, 501 U.S. at 801-06. That court stated:

> [¶] The petition for writ of habeas corpus has been filed and considered. It is DENIED.
>
> [¶] The standard of review for sufficiency of the evidence in prison disciplinary hearings is the "some evidence" test. (Superintendent v. Hill (1985) 472 U.S. 445.) As long as there is a "modicum" of evidence to support the charges, the decision must be upheld. Because of the "some evidence" standard, the court does not have to consider whether petitioner has more evidence to support his allegations than the hearing officer did for his verdict. The court considers only whether some evidence supports the verdict.
>
> [¶] Petitioner claims that no evidence supports the guilty finding on the charge of possession of an inmate manufactured weapon because he did not know the weapon

was in the cell and there was no evidence that the cell was searched prior to the time he moved in. Here, there was some evidence to support the finding that he possessed an inmate manufactured weapon. The weapon was found hidden under the sink in the cell in July 2006. Petitioner had been living in the cell since November 2005. Petitioner claims that the hearing officer failed to consider the Investigative Employee's report which would have proven him innocent. However, as seen from the exhibits attached to the petition, the hearing officer expressly mentioned the report in reaching his disposition of the possession charge. Further, the report actually provides additional evidence because it shows that the weapon could be easily removed from under the sink without using any tools.

[¶] Petitioner also claims that Correctional Lieutenant Johnson never interviewed him in connection with his Second Level Review despite the fact that the Second Level Appeal Decision states that he did. Even if true, this does not affect the instant petition because it does not address whether he was properly found guilty of the possession charge. For purposes of the instant petition, the Court reviewed the Second Level Review document to ensure that Petitioner exhausted his administrative remedies.

[¶] Petitioner also argues that he was improperly denied the right to present witnesses when the hearing officer declined his request for his cellmate to appear at the hearing. However, as seen from the exhibits attached to the petition, the hearing officer concluded on the record that his cellmate's statement was contained in the Investigative Employee's report and the cellmate would not add any additional relevant information. This was proper under the regulations. (15 C.C.R. § 3315(e)(1)(B).)

[¶] Petitioner finally claims that he was improperly denied a Staff Assistant to help fully investigate his case and to ensure confidentiality. However, the exhibits attached to the petition show that Petitioner waived a Staff Assistant prior to and at the actual disciplinary hearing. Further, even if Petitioner had not waived a Staff Assistant, this is not a case where a Staff Assistant would be proper. Petitioner was found to literate, found to underst[an]d English, the issues were not complex, and there is no showing that a confidential relationship was necessary. (15 C.C.R. § 3315(d)(2)(A).)

(Answer, Ex. 1 at 1-2; Pet. at 43-44.)

It is clearly established that an inmate who faces the loss of a state-created liberty interest such as behavioral ("good time") credits is entitled to "those minimum procedures appropriate under the Due Process Clause to insure that the state created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Where inmates have a statutory right to good time credits, the loss of such credits affects a protected liberty interest by "extending the length of imprisonment." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Due process requires that an inmate facing loss of credits receive: (1) written notice of the charges against him at least twenty-four hours before any disciplinary action is taken; (2) a written statement setting forth the basis for the disciplinary action taken against the prisoner; and (3) the opportunity to call witnesses as long

as it would not be "unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 563-67.

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . . *United States ex rel Vajtauer v. Commissioner of Immigration*, 273 U.S. [103] at 106 [1927]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, *the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board*.

*Hill*, 472 U.S. at 455-56 (emphasis supplied).

Walton received the "minimum procedures appropriate under the Due Process Clause" to ensure that the state did not arbitrarily deprive him of good time credits. He received copies of all reports and evidence against him more than 24 hours prior to the hearing. (Pet. at 30.) The RVR reflects that Walton waived appointment of a Staff Assistant prior to and during the hearing. (*Id*.) An Investigative Employee (CO McAnelly) was assigned on August 12, 2006 to act as a fact finder for the SHO because Walton was housed in Administrative Segregation pending the disciplinary hearing. Walton did not object to CO McAnelly serving in this capacity. (Pet. at 33.) CO McAnelly took Walton's statement, interviewed CO Kong (the correctional officer who discovered the inmate-manufactured weapon in Walton's cell) with questions supplied by Walton, and interviewed Walton's cellmate Inmate Rith, whose statement regarding the contraband discovered in his and Walton's cell was the same as Walton's statement. (Pet. at 33-34.) Walton received a copy of the Serious Rules Violation Report containing the results of CO McAnelly's investigation eight (8) days prior to the disciplinary hearing. (*Id*.)

In his first claim, Walton contends that "no shred of evidence" supported the SHO's guilty finding. (*See* Pet. at 13.) Respondent contends that the state court's decision denying Walton's habeas claim should be upheld because the SHO's decision finding Walton guilty of the rules violation was supported by some evidence in the record. (Answer at 7.) Respondent is correct. There was plainly "some evidence" to support the guilty finding, and "some evidence" is all that is required under the Due Process Clause. As set forth in Section II above, the SHO based his guilty finding on the following evidence: (1) the RVR by CO Kong stating that he found the inmate-

manufactured weapon in Walton's cell, (2) Walton's statement that he and his cellmate had been in the cell since November 2005, (3) the information contained in the I.E. Report (Serious Rules Violation Report) by CO McAnelly (set out above), (4) the photographic evidence, viewed by Walton, and (5) the fact that the entire institution was searched in December 2005 including the housing unit cells and the pipe chases. (Pet. at 31.)

In light of the above, the Court finds Walton's first claim meritless. This Court is bound by a standard that requires only "some evidence" to uphold the administrative decision, and some evidence was plainly presented at the hearing. *Hill*, 472 U.S. at 455. Even evidence that may seem meager will satisfy this standard because a prisoner's liberty interest "must be accommodated in the distinctive setting of a prison, where disciplinary proceedings 'take place in a closed , tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.'" *Id.* at 457, 454, citing *Wolff*, 418 U.S. at 561. Thus, state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Accordingly, Walton's first claim is **DENIED**.

In his second claim, Walton asserts that he requested that his cell mate, Inmate Rith, be present as a witness at the disciplinary hearing, but that his request was unreasonably denied by the SHO in violation of his right to due process. (*See* Pet. at 9-17.) Respondent contends that the SHO properly denied Walton's request that Inmate Rith be called as a witness because the investigative report clearly indicated that Rith's testimony would have been entirely duplicative of Walton's and added nothing to the proceedings. (Answer at 5-6.) Respondent is correct. The RVR indicates that the SHO considered Walton's witness request and properly denied it under California regulations because Rith's testimony would have provided nothing new to the testimony already given by Walton. (*See* Pet. at 31.)

The Investigative Employee's Report (Serious Rules Violation Report) drafted by CO McAnelly supports the SHO's decision to deny Walton's witness request. CO McAnelly reported that Inmate Rith stated: "I also was charged with this bogus charge. I don't think the cell was searched, if so, not well enough to find this weapon. I would like to see an Exhibit B and know

what it took to retrieve this weapon. And also, what tools were needed to do so, we do not have any tools." (Pet. at 34.) CO McAnelly went on to note "Inmate WALTON . . . states the weapon was not his or his cellmate [sic] and they had no knowledge that the weapon was there and does not believe he could get to it. Inmate RITH states the same." (*Id*.) Thus, the SHO properly denied Walton's request pursuant to 15 C.C.R. § 3315(e)(1)(B), which states in pertinent part: "[a]n inmate may request that friendly and adverse witnesses attend the hearing. Requested witnesses shall be called unless the official conducting the hearing denies the request for one of the following reasons: . . . The official determines that the witness has no relevant or additional information." *See Wolff*, 418 U.S. at 566 (stating that "irrelevance, lack of necessity, or the hazards presented in individual cases" are among legitimate reasons for refusing an inmate's witness request).

Even *if* the SHO improperly denied Walton's request that Inmate Rith appear as a witness at the disciplinary hearing, Walton has not shown that the denial of the request resulted in prejudicial error so as to justify federal habeas relief. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (". . . [H]abeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") Walton does not allege what difference the hearing testimony of Rith would have made in the outcome of the hearing. There is no indication from the record that Inmate Rith would have testified in any way differently than indicated in the findings and statements set forth in the RVR and Serious Rules Violation Report, which were considered by the SHO. Without more, Walton cannot meet his burden.

As an additional part of his second claim, Walton contends that he was wrongly precluded from presenting documentary evidence at the disciplinary hearing. Specifically, Walton contends that there was "no documentation that the pipe chase was search[ed] prior to . . . Walton and . . . Rith moving in cell # C5-229," and this fact was not properly considered by the SHO in concluding that some evidence supported a guilty finding against Walton. (*See* Pet. at 12.) Walton is mistaken. As the superior court noted in its denial of Walton's claims, the SHO did consider the fact that no "Exhibit B" was found documenting the fact that the cell was searched prior to Walton and Rith moving in. Even though such a search may not have been documented, CO Kong stated that

"Second Watch Officers did search the cell prior [to Walton and Rith moving in]." (Pet. at 34.) The superior court also noted that CO McAnelly's report revealed that no tools were required to retrieve the weapon from the pipe chase, which undermined Walton's argument that he was incapable of either hiding or retrieving the weapon. (*Id*.) Thus, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Accordingly, Walton's second claim is **DENIED**.

In Walton's third claim, he contends that prison officials failed to appoint a Staff Assistant to help him prepare for the disciplinary hearing in violation of his right to due process. (*See* Pet. at 16-17.) Respondent contends that Walton waived assignment of a Staff Assistant and, in any event, Walton did not meet the criteria for such an assignment. (Answer at 6.) Respondent is correct.

Regulations governing the conduct of California prison disciplinary hearings authorize the assignment of Staff Assistants as follows:

> [An] inmate shall be assigned a staff assistant . . . to assist in the preparation, and presentation of a defense at the disciplinary hearing if the classifying official determines: 1. The inmate is illiterate or non-English speaking. 2. The complexity of the issues are such that assistance is necessary so the inmate comprehends the nature of the charges or the disciplinary process. 3. The inmate's disability is such that staff assistance would be necessary for the inmate to participate in the disciplinary process.

15 C.C.R. § 3315(d)(2)(A). In Walton's case, he acknowledged that he "was ready to proceed with the hearing" before the SHO on August 30, 2006. (Pet. at 30.) The SHO specifically inquired whether Walton "reads, writes, and comprehends English at above the 4th Grade Level." Walton responded that he did. (Pet. at 31.) The SHO noted for the record that Walton was not an inmate participating in the Disabilities Placement Program and that he was not currently listed as participating in the Mental Health Services Delivery System within the institution. (*Id*.) Finally, the SHO noted that Walton "did not appear to have any problems comprehending the hearing issues and was fully held accountable for his actions." (*Id*.) In other words, Walton was literate in English, understood the nature of the charges against him and the disciplinary process, and was not disabled so as to warrant the assignment of a Staff Assistant under the regulations.

Based on the specific findings of the SHO, Walton did not qualify for assignment of a Staff Assistant to help him prepare for the hearing. He *was* entitled to assignment of an Investigative

Employee based on the fact that he was confined in Administrative Segregation from July 31, 2006 (when CO Kong made the RVR) to the date of the disciplinary hearing, and CO McAnelly was so assigned. (*See* Pet. at 30, 33-34.) Even assuming, however, that the record were unclear whether Walton qualified for assignment of a Staff Assistant (which, as discussed above, it is not), Walton waived assignment of a Staff Assistant on more than one occasion. On August 6, 2006, the date that Walton requested assignment of an Investigative Employee, he specifically waived assignment of a Staff Assistant. (Pet. at 33.) He again waived assignment of a Staff Assistant at the time of the hearing before the SHO. (Pet. at 30.) Thus, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Accordingly, Walton's third claim is **DENIED**.

In his fourth claim, Walton contends that prison officials violated his right to due process when they failed to interview him as part of his second level inmate appeal. (*See* Pet. at 14.) Walton is mistaken because the record indicates that he was interviewed as part of a second level review and, in any event, he has made no showing that the procedures used violated federal due process protections. In his denial of Walton's "Second Level of Review," Warden Malfi stated: "Correctional Lieutenant S. R. Johnson was assigned to investigate your appeal issues at the Second Level of Review and you were interviewed on November 3, 2006. During this interview, you reiterated the issue as outlined in your appeal. . . . " (Pet at 32.) Thus, the record directly contradicts Walton's contention that he was not interviewed as part of the second level appeal process.

Perhaps more germanely, there is no U.S. Supreme Court law mandating specific appeals procedures regarding decisions resulting from state prison disciplinary hearings. Accordingly, Walton cannot show that the state court's denial of his habeas petition concerning his fourth claim was contrary to such law. *See* 28 U.S.C. § 2254(d). Moreover, there is no indication in the record before the Court that any error was made. There is nothing in the record, and Walton makes no showing, to indicate that Walton's efforts to defend himself against the RVR or appeal the disciplinary decision were thwarted by prison officials. Even if Walton could show a procedural error in his favor, he has not shown that he was prejudiced by the error so as to justify federal

habeas relief. As discussed above, the guilty finding was supported by "some evidence" in the record, and Walton was afforded the federal due process protections required in the context of a prison rules violation proceeding. *Wolff*, 418 U.S. at 563-67; *Hill*, 472 U.S. at 454. Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Thus, Walton's fourth claim is **DENIED**.

## V. CONCLUSION

For all the foregoing reasons, the Petition is **DENIED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: March 17, 2009

**WILLIAM Q. HAYES**
United States District Judge